## CLARK vs. LOKER.

A and B, brokers, have mutual dealings as such, by which A becomes indebted to B; A and C having notes of a bank in doubtful circumstances, unite and transmit the funds to B. The funds are remitted in the name of A, and received by B as the funds of A, without any notice of the interest of C. While so held by B, they are assigned to him by A, in payment of a pre-existing debt due from A. Held, that B, is a *bona fide* holder without notice, and not liable to C. It is not necessary that B should give new credit to A.

## ERROR to St. Louis Circuit Court.

FIELD & WHITE, *for Plaintiff in error, insist:*

1. The verdict of the jury was directly against the second instruction given by the court on defendant's motion, and for this reason should have been set aside; for the evidence of Dodge was express to the agreement mentioned in that instruction, and was uncontradicted by any other evidence.

2. The verdict was also against the instruction marked 7, and given on defendant's motion, for no express contract with the plaintiff was proved or pretended, and it was directly proven by Jenks, the plaintiff's witness, that he was interested in the Cairo money with the plaintiff at the time when it was sent to defendant for collection.

3. The capital error of the court below consisted in giving the second instruction on motion of plaintiff, which cut off the ground of defence presented in defendant's first instruction. The proposition contained in this second instruction is not law; on the contrary the rule is well established that a banker having a balance of accounts in his favor, on being liable as acceptor for a customer, is a holder for value of all the commercial paper of that customer in his hands in the ordinary course of business. Bosonquit & Deedman, 1 Stark. R., 1; Exparte Blosham, 8 Ves. 521; Swift vs. Tyson, 16 Pet. R., 1; where the cases are examined with much care. And see also Story's Prom. Notes, sec. 195, and the note; Story's Bills of Exch., sec. 192; see also the recent case, Bank of M. vs. N. E. Bank, 1 Howard, 234.

GANTT, *for the Defendant in error, makes the following points:*

1. The finding of the jury upon the facts was warranted by the evidence. 6 Mo. R., 61; Dooly & Kirkland vs. Jennings, 9 Mo. R., 402.

2. It was conformable to the instructions of the court.

3. The instructions given by the court contained a correct exposition of the law. 2 D. & E., p. 4, Edmonson vs. Machell; see also Wilkinson vs. Payne, 4 J. R., (D. & E.,) 468, and cases there cited. See also, Newman vs. Lawless, 6 Mo. Dec., 301; Stewart vs. Small, 5 Mo. R., 525; Ferguson vs. Turner, 7 Mo. Dec., 497; Finney vs. Allen, 419; ib. Vaulx vs. Campbell, 8 Mo. R., 224.

McBRIDE, J., *delivered the opinion of the Court.*

Loker brought his action of assumpsit by attachment against Clark in

7

the Circuit Court of St. Louis county. The declaration contained the common counts. Publication having been made, the defendant came in, entered his appearance to the action and filed his pleas. At the April term, 1847, the cause came on for trial, when the plaintiff gave evidence conducing to show, that he together with several others, in the fall of 1842, being possessed of notes on the Cairo bank, which was then greatly below par, the bank having stopped payment, learning that there was a possibility of making a part of their demands, by attaching funds belonging to that bank in Philadelphia, contributed towards making up a certain amount of said notes for the purpose of instituting proceedings against the bank in the city of Philadelphia. The nominal amount made up was $13,500, the principal part of which belonged to Presbury—about $2000 to S. H. Mudge & Co.—about $1100 to S. H. Allen, and about $300 to the plaintiff and G. W. Jenks. At this time Loker, the plaintiff, was, and had been for some time past, confidential clerk of S. H. Mudge & Co. The package containing the Cairo money was made up in the counting room of S. H. Mudge & Co., and it together with a letter of instructions was despatched by a special messenger, Alfred Richardson, to Philadelphia, addressed to E. W. Clark & Co. Richardson was also charged with instructions to Clark & Co., to proceed to attach the fund belonging to the Cairo bank, and discretionary power was given them to compromise or adjust the demand as they might think most advisable. In the month of November or December following, Presbury was in Philadelphia, and went to see Clark; upon asking how the Cairo money was coming on, Clark replied, that it was doing very well, adding, as you are the largest owner of it, what adjustment must I make with the Cashier, who is expected here next week? Presbury had not mentioned the fact of his interest or part ownership of the funds before Clark made this remark. Clark did not mention the names of any other parties interested. In February or March next following, Clark came to St. Louis, where he acknowledged having realized a large sum of money by way of compromise and adjustment with the Cairo bank. The share of it accruing to the plaintiff, according to the amount by him contributed, would be about $150 due in February or March, 1843.

All of the parties in interest were present when the package was made up, in the office of S. H. Mudge & Co. The share of each was called out and assented to, but whether from the letter addressed to Clark & Co., or from some other memorandum, none of the witnesses could say.— Richardson, who was the agent employed on the occasion, died in July, 1843.

The defendant gave evidence tending to prove that the custom of business between the house of Mudge & Co., at St. Louis, and the defendant's house in Philadelphia, was for the former to draw on the latter, and from time to time to transmit to them commercial paper for collection, which was passed to the credit of the former. At the time of transmitting the Cairo money, there was a large balance due to the defendant's house from Mudge & Co. A paper was introduced, signed by Mudge & Co., dated Sept. 1, 1842, assigning to the defendant's house all the funds coming to them from the suit for the Cairo money, and was attested by the plaintiff. That the Cairo money belonging to the plaintiff was sent on under an agreement that he should look to Mudge & Co. for his pay, and that afterwards the plaintiff had taken a gold watch from Mudge & Co. in part pay for it.

The plaintiff to rebut this evidence, introduced testimony to prove that Mudge & Co. had in effect been insolvent since June, 1842; that plaintiff knew this, and that the watch and chain were received by him in partial satisfaction of his arrears of salary due from Mudge & Co. That Jenks was at the time the Cairo money was sent forward, jointly with the plaintiff interested in it, but his interest was not disclosed to any one, and it stood in the name of Loker. That before the suit was commenced, Jenks, had released his interest to Loker, and was never known in the transaction so far as the defendant was concerned. That the house of Clark & Co. had not accepted any bills or given any new credit to Mudge & Co. since 1st June, 1842.

On this evidence the court, at the instance of the defendant, gave the jury the following instructions:

1. If the jury believe that the Cairo money for which the plaintiff claims to recover, was sent by the house of Mudge & Co., to the banking house of which the defendant was a member, in one package along with other money belonging to Mudge & Co., without any notice to the defendant's house that any part of said package belonged to any person other than said Mudge & Co., and that said money in the usual course of business was received by the defendant's house as the property of said Mudge & Co. and before any notice to the defendant's house that any part of said money belonged to the plaintiff, the same was assigned by said Mudge & Co. to the defendant's house, in payment or as security for a balance due from said Mudge & Co. to the defendant's house, then the plaintiff is not entitled to recover.

2. If the jury believe that the Cairo money, for which the plaintiff seeks to recover, was advanced by the plaintiff to S. H. Mudge & Co.,

under an agreement or understanding that they should be his debtors for the amount, then the plaintiff is not entitled to recover in this action.

3. If the jury find that the plaintiff was a clerk in the house of Mudge & Co., and knew that the latter had assigned to the defendant's house, the Cairo money as security for a balance in favor of defendant's house and did not give notice to defendant of his claim to said money, this is sufficient evidence of the agreement or understanding mentioned in the last instruction, and the jury will be warranted in finding a verdict for defendant.

4. If the jury believe that the plaintiff has been paid for the Cairo money advanced by him to Mudge & Co., by way of the watch taken by him as spoken of by the witness or otherwise, then the plaintiff is not entitled to recover.

5. If the jury find that no express contract was made by the defendant or defendant's house with the plaintiff alone at the time of the receipt of the Cairo money, and that in fact Jenks and plaintiff were jointly interested in the money now claimed by plaintiff, at the time the defendant received the same, then plaintiff cannot recover in this action.

The plaintiff then asked and the court gave the following instructions:

1. The plaintiff is entitled to claim and receive his property, wherever he may find it, unless he has allowed some third person to be injured by his silence touching his ownership, in which case he is estopped to aver his ownership, as to such third person.

2. Unless the defendant after receiving Cairo money, gave new credit or made new advances to the firm of Mudge & Co., on account thereof, in ignorance of the claim of plaintiff, he, said defendant cannot resist any demand which plaintiff may have to the proceeds thereof, because no notice of plaintiff's interest was given to defendant at the time the Cairo notes were sent on.

The defendant excepted to the giving of the two last instructions, and the jury having found against him, he moved for a new trial, assigning the usual reasons, which being overruled, he excepted and brings the case here by writ of error.

It is insisted by the attorney for the appellant, that the finding of the jury in the case, was against the second and fifth instructions given by the court at his instance; and, that the court below, erred in giving the plaintiff's second instruction.

The evidence of the witnesses, was given *ore tenus*, before the jury and in presence of the court. It is the peculiar province of the jury to weigh the evidence and decide upon it. They have done so, and if they erred,

it was the duty of the court to set aside their finding, and grant to the defendant a new trial. The Judge of the Circuit Court has expressed himself satisfied with their finding, and we see no sufficient reason to justify us in interfering with their verdict.

Does the second instruction, asked by the plaintiff, and given by the court, contain a true exposition of the law?

The principle involved in that instruction, has been frequently before the English courts and the courts in this country, and whatever contrariety of opinion may have existed heretofore on the subject, it may now be considered as well settled. In the case of *Swift vs. Tyson,* 16 Peters R., 1, the court after an elaborate investigation of the subject, and a review of numerous decisions made thereon, came to the conclusion "that a *bona fide* holder of a negotiable instrument for a valuable consideration, without any notice of facts which impeach its validity as between the anticedent parties, if he takes it under an indorsement made before the same becomes due, holds the title unaffected by these facts, and may recover thereon, although as between the anticedent parties, the transaction may be without any legal validity. This is a doctrine so long and so well established, and so essential to the security of negotiable paper, that it is laid up among the fundamentals of the law, and requires no authority or reasoning to be now brought in its support. As little doubt is there that the holder of any negotiable paper, before it is due, is not bound to prove that he is a *bona fide* holder, for a valuable consideration without notice; for the law will presume that, in the absence of all rebutting proofs, and therefore it is incumbent upon the defendant to establish by way of defence satisfactory proofs of the contrary, and thus to overcome the *prima facie* title of the plaintiff.

Mr. Justice Story in delivering the opinion further remarks: "In the present case, the plaintiff is a *bona fide* holder without notice, for what the law deems a good and valid consideration, that is, for a pre-existing debt." Then after reviewng the New York decisions on this question the Judge proceeds to say, "It becomes necessary for us, therefore, upon the present occasion to express our own opinion of the true result of the commercial law upon the question now before us. And we have no hesitation in saying, that a pre-existing debt does constitute a valuable consideration in the sense of the general rule already stated, as applicable to negotiable instruments. Assuming it to be true, (which however may well admit of some doubt from the generality of the language,) that the holder of a negotiable instrument is unaffected with the equities between the anticedent parties, of which he has no notice, only when he

receives it in the usual course of trade and business for a valuable consideration, before it becomes due; we are prepared to say, that receiving it in payment of, or as security for a pre-existing debt, is according to the known usual course of trade and business. And why upon principle should not a pre-existing debt be deemed such a valuable consideration? It is for the benefit and convenience of the commercial world to give as wide an extent as practicable to the credit and circulation of negotiable paper, that it may pass not only as security for new purchases and advances made upon the transfer thereof, but also in payment of and as security for pre-existing debts. The creditor is thereby enabled to realize or to secure his debt, and thus may safely give a prolonged credit, or forbear to take any legal steps to enforce his rights."

Thus it would appear not to be necessary that *new credit* was given, or *new advances* had been made *on account* of the Cairo money; but the receipt of it in discharge of a pre-existing indebtedness of Mudge & Co. to Clark & Co., would entitle the latter to hold it unless notified of the plaintiff's interest therein.

It is contended, however, that if the instruction was wrongfully given, still from the evidence in the case, the jury might well have found a verdict for the plaintiff without it, and the court should presume they did so. We can indulge in no such presumption. We suppose that the jury paid that deference and respect to the instructions of the court, which it was their duty to do, and that doing this, they were misled by the error inadvertently committed by the court in giving the instruction.

The judgment of the court ought to be reversed, and the other Judges concurring, the same is reversed, and the cause remanded for a new trial in the Circuit Court.