Odell & Frink vs. Gray & Co.

ODELL & FRINK PLAINTIFFS IN ERROR, vs. GRAY & CO. DEFENDANTS IN ERROR.

1. The term "negotiable," in its enlarged signification, applies to any written security which may be transferred by endorsement or delivery, so as to invest in the endorsee the legal title, and·a right to maintain thereon, a suit in his own name.

2. The holder of negotiable paper, who puts his name upon it, and thereby gives it currency, though placed in the hands of an agent without consideration, cannot reclaim it or its proceeds from a *bona fide* purchaser, for a valuable consideration, and without notice.

3. In order to constitute such valuable consideration as will protect a *bona fide* purchaser, it must appear that credit was given on the faith of the negotiable paper transfered to him.

## ERROR to St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This was an action of assumpsit, brought by Odell & Frink against the defendants, to recover from them a sum of money paid to them by one Griffin. The defendants pleaded the statutory plea. The record discloses the following facts: On the 26th day of February, 1848, plaintiffs left with Lake & Co. of New York, bankers, a note, made by Isaac Griffin, payable to the order of the plaintiffs, for the sum of $382 53, dated August 20th, 1847, payable in seven months from date, at the Bank of Missouri. The note was endorsed in blank by Odell & Frink, the plaintiffs, and was left with Lake & Co. for collection. Lake & Co. endorsed said note over to the defendants, and sent it to them at St. Louis for collection. The amount of the note was paid to defendants on the 23d of March, and put to the credit of Lake & Co., who were, at that time, indebted to the defendants. On the 25th of March, 1848, defendants addressed a letter to Lake & Co. as follows:

"BANKING HOUSE, GEORGE E. H. GRAY & Co. ?
St. Louis, March 25th, 1848. }

Messrs. JOSEPH S. LAKE & Co. ?
        New York. }

We sent you 23d instant $186—we learn nothing from you to reply to—no mail for the last three days from the east: we have to your credit Isaac Griffins note paid $382 53·100. Please send us at your leisure account current of last month.
                                We remain yours truly
                                        GEORGE E. H. GRAY & CO."

On the 28th of March, Lake & Co. suspended payment, and about the middle of April of the same year, Franciscus, one of the defendants, visited New York, and had several conversations with Joseph S. Lake, of the firm of Lake & Co. At one of their conversations, Lake told him that the note of Griffin was left with Lake & Co. for collection; Franciscus said that Gray & Co. had put the amount to the credit of Lake & Co., and a settlement was made with defendants, and the amount allowed to them by said Lake & Co., although Lake & Co. had not charged the amount of said note to Gray & Co., on their book: they acted under legal advice in not doing so. Jo·eph S. Lake & Co. collected time and sight drafts for Gray & Co.; received money on deposit for them, and acted generally as bankers for them. Lake & Co. received from Gray & Co. from $25 to $30,000 per month, more or less. Geo. E. Gray & Co. collected promissory notes and bank bills for Lake & Co., payable at St. Louis, and in that neighborhood, as also defendants &c. Gray & Co. never discounted any paper for Lake &

Odell & Frink vs. Gray & Co.

Co., Lake & Co. told defendants, or one of them, at or before the settlement, that the plaintiffs claimed the amount of them. There was an understanding between Gray & Co. and Lake & Co., by which they could draw upon each other, whether they had funds in hand or not. The course of dealing between them was in accordance with that understanding, that drafts remitted were passed to the credit of the firm remitting. At the time the Griffin note was passed, Lake & Co. were indebted to Gray & Co. The Griffin note was endorsed in blank by plaintiffs, and by Lake & Co. endorsed to Gray & Co. Lake & Co. did not make regular entries in their books for some days after their failure. Gray & Co. upon the settlement spoken of, discharged Lake & Co. from all indebtedness, by a release. Plaintiffs called upon Lake & Co. after their failure, and enquired for said note, and they told them where it was or where it was sent for collection. Lake & Co. remitted no funds to Gray & Co. to draw against. The amount of business which Lake & Co. did for Gray & Co. was greatly larger than that done by Gray & Co. for Lake & Co. It was only occasionally that Lake & Co. had any thing to do at St. Louis. The business of Lake & Co. at St. Louis was principally the collecting of drafts &c. Lake & Co. frequently bought drafts on St. Louis. The Griffin note was remitted in the ordinary way in which other notes were remitted to Geo. E. H. Gray & Co. by Lake & Co.

It was admitted on the trial that Gray & Co. were private bankers, and that the following note was the identical note paid by Griffin to defendants:

"$382 53: NEW YORK, August 20, 1847.

Seven months after date I, the subscriber, of Belleville, State of Illinois, promise to pay to the order of Odell & Frink three hundred eighty-two and fifty-three hundredth dollars, at the Bank of Missouri at St. Louis: Value received.

"Endorsed,

"Odell & Frink, pay George E. H. Gray & Co., or order. JOSEPH S. LAKE & CO."

Plaintiffs further proved by Pierce C. Grace, that on the 20th of April, 1848, he demanded the proceeds of said note of the defendants, and the defendants refused to pay the same, stating to him that they had passed it to the credit of Lake & Co. Upon this state of facts, the plaintiffs asked the following instructions which was given:

1. If the jury believe from the evidence, that George E. H. Gray & Co., at the time of the receipt of the Griffin note, had notice, either express or implied, that Joseph S. Lake & Co. had no interest in said note, and that it had been transmitted to said defendant for collection, merely as agents, then Gray & Co. were not entitled to retain, against the plaintiffs, the proceeds of said note for the general balance of their account against Lake & Co.

The following, asked by the plaintiff, were refused:

2. And if Gray & Co had not notice that Lake & Co. were merely agents, but regarded and treated them as owners of the said note, yet Gray & Co. are not entitled to retain the proceeds of said note against the plaintiffs who were the real owners, unless credit was given to Lake & Co. or balances were suffered to remain in their hands to be met by these notes, or by such negotiable paper transmitted or expected to be transmitted in the usual course of the dealings between the banking houses of Gray & Co. and Lake & Co.

3. In order to entitle the defendants to retain the proceeds of said note by virtue of their lien as bankers, the jury must find from the evidence, that the defendants made advances or gave new credit on account of their note or on account of the expectation of the transmission of such notes without notice that their note was sent for collection merely by Lake & Co. as agents for the owner.

4. If the jury believe from the evidence, that the collection of notes by the house of Gray & Co. for the house of Lake & Co. was only an occasional transaction, that the principal and legitimate business between said banking houses, was in buying and selling exchange on each other, pursuant to an arragment or arrangement made before the Griffin note was sent to the defendants' for collection, and that defendants did not make any advances on the note to Lake & Co. or give Lake & Co credit for any advances then made or to be made, upon the deposit of said note with them or upon the transmission of such paper to defendants by Lake

Odell & Frink vs. Gray & Co.

& Co. in the usual course of their mutual dealings of the like nature, and that the plaintiffs were the real owners of said note and endorsed it to Lake & Co. for collection only, and that the defendants have received the proceeds of said note from Griffin the maker, and have not since the receiving of said proceeds paid them over to Lake & Co., previous to the notice of the plaintiffs interest in said note, then the jury will find for the plaintiffs and assess the damages at the amount of the note, with interest from the time payment thereof was demanded of defendant, deducting therefrom the usual commission allowed to brokers for collecting such paper.

5. The note in question, not being negotiable by the law of Missouri, the defendants in this action could not acquire a lien on the proceeds thereof by virtue of the assignment of Lake & Co.

The court, on defendants' motion gave the following instructions:

1. If the jury find from the evidence that the note of Isaac Griffin, sued upon·in this case, was endorsed by Odell & Frink to Lake & Co. and by Lake & Co. endorsed to the defendants, and that defendants received the money and put the same money to the credit of Lake & Co. before their failure in the ordinary course of business as brokers and in accordance with their business also with Lake & Co. and that at the time of so putting it to the credit of Lake & Co., said Lake & Co. were indebted to the defendants in a sum larger than said note, and that defendants had no notice of plaintiffs' claim to said note, they will find for the defendants.

2. If Lake & Co. were indebted to the defendants at the time they collected their money on the note in question, the defendants were authorized to place it to the credit of Lake & Co. (if said defendants had no notice of a special claim or ownership on the part of the plaintiffs) and if the jury find from the evidence that this was in the ordinary course of business between Lake & Co. and defendants, it is equivalent to payment, and is sufficient to exonerate the defendants from liability to the plaintiffs and they will therefore find for the defendants.

The plaintiffs became nonsuited with leave to move to set the same aside. The motion was overruled and plaintiffs sued out a writ of error.

## HILL, for plaintiffs in error.

I. Odell & Frink never put this note in circulation by their endorsement; it was never treated by defendants as a note in circulation, it was sent to them for collection only; it was received and treated by defendants as such paper, and they claimed the proceeds by virtue of their lien as bankers, and not as holders for value.

II. The usages of trade and the customs of bankers prove this paper to have been sent for collection and not for discount; and defendants so treated it and claimed no other title: 1. Peters 29 and 30 by Chf. Jus. Marshall; 6 Conn. 521.

*III. The real owners of the note are the plaintiffs, and the defendants claim it, because plaintiffs trusted defendants' sub agents and intimate correspondents with it, for collection. Defendants have no claim against plaintiffs, but would take their money to pay for the losses of the defendants by their misplaced confidence in Lake & Co., their brokering agents in New York.

IV. Defendants and Lake & Co. were intimate friends and agents for each other; plaintiffs knew nothing of defendants, but as plaintiffs trusted Lake & Co. with a note for collection; defendants claim the right to appropriate it to their own use. It is humbly submitted, that this should be done in due form of law, and with all reasonable solemnity.

V. Defendants gave no credit to Lake & Co. on the receipt of this note, and the money collected is now in defendants hand; it does not belong to defendants, but does belong to plaintiffs; and the proceeds should be awarded to the rightful owners.

VI. Defendants ought not to take plaintiffs' money, because defendants' brokering friends and correspondents have failed; unless plaintiffs, by giving Lake & Co. facilities or credit, increased defendants' loss. This, plaintiffs did not do; and the simple question is, shall plain-

Odell & Frink vs. Gray & Co.

tiffs or the defendants suffer by the failure of the confidential brokering friends and correspondents of the defendants.

VII. As it is not plaintiffs' fault, that Lake & Co., the depositaries and brokering friends of defendants, failed; that failure ought not to work a confiscation of plaintiffs' property, which, without plaintiffs' knowledge or consent fell into defendants' hands, through the friendly brokering agency of Lake & Co., the defendant's bankrupt correspondents.

VIII. The plaintiffs have not given any one credit for their note; they have only trusted it with Lake & Co. for collection, and both Lake & Co. and the defendants well knew, and were bound to know, by the customs of bankers, that this note was a country note for collection, and that defendants had no title to it or its proceeds, as against the real owners; and plaintiffs insist that the operations of these mutual brokering agents, shall not forfeit their rights.

IX. Plaintiffs insist that there is no authority to be found, even in the glorious uncertainties of the law; under color of which, there can be any good excuse found, to deny to the plaintiffs justice, or to give their property to persons, who have no moral nor legal title to it; even if the claimants are mutual brokering agents.

X. The sustaining of plaintiffs' just claim to their own property, will not invalidate the security of parties, who are *bona fide* holders of bills or notes for value. Notes remitted by bankers or brokers for collection, have never been treated as paper in circulation; and no lien has ever been given upon such paper, except where an express or implied credit was given upon it, to the banker by whom it was sent, without notice of the claim of the real owner.

XI. No credit was given by defendants to Lake & Co. upon this note, or in the expectation of the transmission of such paper for collection or otherwise; and the proceeds have never been paid over by defendants to any one. The defendants have no imaginable claim, unless the fact of Lake & Co. being bankrupts, and indebted to defendants upon another account, gives defendants a right to take the property of an innocent party, to indemnify them for their losses, by reason of the failure of their brokering friends and correspondents.

XII. Lake & Co., as brokers in New York, in receiving notes for collection at a distance, necessarily undertook to employ sub-agents to make such collections; and this was the whole extent of their authority; and the defendants, in this case, were only sub-agents of Lake & Co., and had no lien on the proceeds, except by substitution, to the lien of Lake & Co. for the fees of collection. The authorities are full and conclusive in support of this proposition: Lawrence vs. Stonington bank, 6 Conn. 521, in point; Story's agency, secs. 338, 389 and 14; Frazier vs. Erie bank, 8 Watts and Ser. 32; 9 East 12; 7 Bing. 284; 6 Mass. 430; 19 Ves. 299; 1 Rose 154, 243, 232; 1 Bos. and Pull. 648, 546; Amer. Lead. cases, vol. 1, 544; 1 Peters United States supreme court 29, 30; Wilson & Co. vs. Smith, 3 Howard S. C. United States, 763; 6 Harr. and John 146; 4 Rawle 385; 8 Cow. 198; 23 Peck 330; 3 Hill, New York 560; 22 Maine 157; East Haddam Bank vs Scoril, 12 Conn. 304.

XIII. Lake & Co., brokers in New York, were agents for the collection of notes, payable at a distance, and as such agents, received this note, payable at the bank of Missouri for collection; and the employment of a sub-agent was apparent from the face of the note, and the necessity of trade required it; so that defendants had no more right to suppose that Lake & Co. were the owners of this note, sent to defendants for collection; then they had to suppose they (defendants) were owners, because it was endorsed and sent to them for collection, by their brokering correspondents. See cases above cited.

XIV. Sub-agents have no lien for the general balance of their account against their principal agent, upon the securities or paper of the customers of the principal agent, that may come into the hands of the sub-agent, from the principal agent. Where from the nature of the business, or by an express or implied agreement, a sub-agent is to be employd, there, a privity exists between the principal and the sub-agent, and the lien of the sub-agent can only extend to the amount of his charges, in the particular case. See cases above cited, and 22 Maine 138; Story's agency, 389, 90; 5 Iredell 551; bank of New Orleans vs. Smith; 3 Hill 560; 8 W. and S. 18.

XV. The only claim defendants can pretend to set up, is, that they have a lien for the general balance of their account against Lake & Co. upon the proceeds of the plaintiff's note. To entitle

defendants to this lien, they must have given Lake & Co. credit or have made advances to Lake & Co. on account of this note, or in the expectation of the transmission of such paper: Lawrence vs. Stonington bank, 6 Conn. 521; bank of Metropolis vs. New England Bank, 6 How. S. Ct. 222; Wilson & Co. vs. Smith, 3 Howard 763, and cases above cited.

A. No such credit was given by defendants to Lake & Co., nor were any advances made on this note or in the expectation of the transmission of such paper for collection. The defendants still have the money collected on this note, and all the credit they give to Lake & Co. was under an agreement to draw without funds.

XVI. This note being payable in Missouri, must be construed according to the laws of this State, where the contract was to be executed. By our laws, it was not negotiable and passed subject to equities. unless it went into the hands of a bona fide holder for value, without notice before it was due. Defendants then obtained no title to this note by the assignment of Lake & Co. for collection; as against plaintiffs; and the only release of defendants would have been the payment of the proceeds to Lake & Co , which they have not done.

XVII. The court below erred in refusing to give the 2nd, 3rd, and 4th instructions of plaintiffs, embodying, as they do, the true rule in the case.

The court below erred in giving the first and second instructions of the defendants for the reasons stated in this brief; the question of defendant's sub-agency, and the credit, if any, given by defendants on this note or in the expectation of the transmission of such paper, being entirely left out of the case; and these being the only questions of importance in the case, the plaintiffs took a nonsuit, with leave to move to set aside the same, and seek to have this court rule, so that they may have a fair trial.

## Lord, for defendants in error, insists:

I. That they had a right to place the money received by them on said note to the credit of Lake & Co.

The note came to the hands of defendants, regularly endorsed over them the legal title by the endorsement not recited in them. They were only required to account to Lake & Co., and having done so will not be required to pay it a second time: Clark vs. Laker, 11 Mo. Rep. 99, and cases below cited; 5 Johnson Ch. Rep. 54; same case 20; Johnson's Rep. 636.

II. The law, as enunciated by the court below, in the instruction given for the plaintiff, and the two given for the defendants, is the law of this case.

The proposition contained in these instructions, is this: If the note question, came to the hands of the defendants, in due course of their business, and the money collected by them on the note, put to the credit of Lake & Co., who were indebted to them without any knowledge of any claim the plaintiff had on said note, then the defendants are not liable to the plaintiffs.

This case stands before this court just as though it had been distinctly found by the jury, that defendant had no knowledge of plaintiff's interest, and no knowledge that the note was transmitted merely for collection, and that it came in the usual course of business. By taking a nonsuit, the question of fact, put to the jury by the instruction, will be deemed to have been found in favor of the defendants. See opinion of this court in this delivered at the March term, 1850.

III. The placing of the amount to the credit of Lake & Co., was payment, and exonerated the defendants from any claim of the plaintiffs on that account.

IV. The court below very properly refused the instructions asked for by the plaintiffs, numbered 2, 3, 4 and 5.

Because the defendants in this case were bona fide holders without notice, of any claim of the plaintiffs, for what is in law a valid consideration, that is for a pre-existing debt: Swift vs. Tyron, 16 Pet. 1; note on same case in Hare & Wallace Lead. cases (Am.) p. 191, vol. 1; 11 Ohio Rep. 172; Story on Prom. notes, sec. 195, p. 215; 11 Mo. Rep. 99; 20 Johnson 636.

The instructions numbered 2, 3 and 4, are based on the supposition that a pre-existing debt is not a good consideration, but that there must have been some new credit given or advance made

on the paper in question.    This is not the law, and the courts of New York, where such doctrine was held to be law, have long since exploded it: 23 Wend. 311; 1 Denio 583; 21 Wend. 499.

.When the money received in this case by the defendants, was put to the credit of Lake & Co., so much of the indebtedness from Lake & Co. to defendants was extinguished.    It is absurd to say that giving up a security for a debt is a consideration and yet, that the giving up the debt itself is not a consideration.    See Am. leading cases, note, page 192.

As to the instruction No. 5, we say that the note was negotiable when made and where the plaintiffs reside, and if not negotiable by the laws of Missouri, then the assignment on the back of the note by plaintiffs was prima facie an absolute assignment of all their interest in the note and in that light the defendants had a right to regard it, and very properly did so regard it, in the absence of notice, and put the funds to the credit of the first assignee.    If Odell & Frink wished to make a limited assignment of the note, they should have so expressed it, otherwise it would operate as a fraud upon all subsequent holders.


SCOTT, J., delivered the opinion of the court. ·

In the argument of this cause, it was contended by the plaintiffs counsel, that the note, in which this controversy had its origin, was not negotiable, within the meaning of the statute relative to bills of exchange and negotiable promissor notes; and therefore, that the principles of law, asserted in the several instructions given by the court, were inapplicable.    The term "negotiable," in its enlarged signification, applies to any written security which may be transferred by endorsement or delivery, so as to vest in the endorsee the legal title, so as to enable him to maintain a suit thereon, in his own name.    In this sense of the term, a bond, under the statute concerning bonds and notes, may be said to be negotiable, and in this sense is the term understood when applied to paper in cases similar to that now under consideration. .In this State, where there exists both bonds and promissory notes which are negotiable, but yet have none of the properties of a bill of exchange, but their being sueable upon in the name of the endorsee and——notes with all the characteristics of a bill of exchange, the term assignable is usually applied to the former, and negotiable to the latter class of those instruments.

The note, the proceeds of which are the subject of this suit, although made in New York, as it appears from its face, is payable here, and will look to the laws of this State for the ascertaining of its nature and properties.    Although it is not negotiable, in one sense of the term, yet it is in the sense which will enable a bona fide holder, for valuable consideration, to retain it or its proceeds against all claims of the payee. The holder of negotiable paper, who will put his name upon it and thereby give it currency, although he may place it in the hands of an agent, and without consideration, yet, cannot reclaim it from a holder who is

fonnd in possession of it or its proceeds—who has paid value for it. The maxim, that where one of two innocent persons must sustain a loss by the act of another, it shall fall upon him who put it into the power of the third person to do the act occasioning the loss, is applicable here. The rule, that the bona fide holder of negotiable paper for value shall retain it or its proceeds against the payee, is generally admitted. In its application, however, a difficulty has arisen, as to what is a valuable consideration. If the holder has a pre-existent debt against the person from whom he receives it, it has been questioned, whether the mere application of the proceeds to the extinguishment of the debt or placing them to the credit of the person from whom it is received, will deprive the payee of his right to pursue the money in the hands of the holder. It is said that there must be an advance of money or a giving of new credit on the faith of the paper, otherwise the holder has sustained no injury. In the case of Clark vs. Loker, 11 Mo. Rep. 97, it was holden, that a creditor, to whom there was a transfer in good faith, of depreciated bank paper, in payment of a debt by an agent, to whom it had been entrusted, would hold the paper, unaffected by the claim of the principal. The case of the bank of the Metropolis against the New England bank, 6 Peters 227, has carried the doctrine of the protection of bona fide holders of negotiable paper against the payee, as far as is warranted by authorities, and to an extent not sustained by the decisions of some courts. One of the instructions, asked by the plaintiff, was nearly in the language of the court in that case. The instructions given by the court, at the instance of the defendants, was more liberal to the defendants than any case will warrant. Every presumption is in favor of the holders of negotiable paper; bona fide and for a valuable consideration, and he who would reclaim its proceeds, must show the facts which would entitle him to the relief he seeks. It is said, that the payment of a pre-existing debt, or placing the proceeds of a note to the credit of him from whom it is received, leaves the holder in the same situation that he was in before he took the paper, in the event of his being compelled to restore the proceeds, and therefore he is not injured. In the case above referred to, of the bank of the Metropolis vs. the New England bank, 1 Howard 238, it is maintained, that the difference in principle is not perceived, between an advance of money and a balance suffered to remain upon the faith of these mutual dealings. In the one case, as well as in the other, credit is given upon the paper deposited or expected to be transmitted in the usual course of the transactions between the parties. If the parties appeared to be, and treated each other as the true owners of the paper mutually remitted; and had no

notice to the contrary, and that balances were, from time to time, suffered to remain in the hands of each other, to be met by the proceeds of negotiable paper, deposited or expected to be transmitted in the usual course of dealing between them, then the holder is entitled to retain for the amount due on the settlement of the account. This authority does not go to the extent, that the mere placing the proceeds to the credit of the person from whom the paper was received and against whom there is a balance, will avail the holder as a defence. It must appear, that credit was given on the faith that such remittances would from time to time be made.

Judge Ryland concurring, the judgment will be reversed and the cause remanded.