JOHN H. TERRY, Respondent, *v.* WILLIAM T. HICKMAN *et al.*, Appellants.

### February 14, 1876.

Defendant executed his negotiable promissory note to an insurance company for a policy which he afterwards ascertained to be fraudulent and worthless. Plaintiff purchased the note, before maturity, for less than half its face value. Whether plaintiff had notice of the alleged fraud, and whether he purchased the note for cash, or took it as collateral for an antecedent debt, were questions in dispute. *Held*, 1. It was competent for the defendant to show that the insurance company had no real capital. 2. If two or more facts are necessary to establish a certain conclusion, the court may, in its discretion, direct the order in which such facts are to be presented by the testimony. 3. The refusal of an instruction which is unimpeachable in its application to the evidence is not error, when an

instruction properly commenting on the evidence has already been given. 4. No harm was done the plaintiff's case by the exclusion from evidence of the company's certificate of incorporation, when the note made payable to it was in evidence for another purpose. 5. The giving of instructions, when not assigned below as a reason for a new trial, cannot be urged for error in the appellate court.

Appeal from St. Louis Circuit Court.

*General term reversed; special term affirmed.*

*E. B. Sherzer*, for appellant, cited: Brady *v.* Connelly, 52 Mo. 19, 20; Curtis *v.* Curtis, 54 Mo. 351, 352; Carver *et al. v.* Thornhill, 53 Mo. 283, 285, 286; Musgrave *et al. v.* Ausmus *et al.*, 51 Mo. 561, 568; Saxton *et al. v.* Allen, 49 Mo. 417, 418; Develin *v.* Clark, 31 Mo. 22, 24; Byles on Bills (Sharswood's ed.), 187, 189, note 1; Develin *v.* Clark, 31 Mo. 22, 23; Hamilton *v.* Marks *et al.*, 52 Mo. 78, 80, 81; Parvin *v.* Noyes, 39 Me. 384, 386; Munroe *v.* Cooper, 5 Pick. (Mass.) 412, 413, 414; Hunt *v.* Sandford, 6 Yerg. (Tenn.) 387, 392, 393; Story on Prom. Notes (7th ed.), secs. 186, 196; State *ex rel. v.* Saline County Court, 45 Mo. 242, 249; Henderson *v.* Bondurant, 39 Mo. 369, 373, 374; Smith *v.* Lac County, 11 Wall. 139, 147; Grued *v.* Stevens, 43 Vt. 125, 128, 129; Roberts *v.* Hall, 37 Conn. 205, 1212; Harris *v.* Hays, 53 Mo. 90, 96; Clements *v.* Maloney, 55 Mo. 352, 358, 359; Sears *v.* Wall *et al.*, 49 Mo. 359, 360; Hurp *v.* Salisbury, 55 Mo. 310, 313, 314; Bailey *v.* Smith, 14 Ohio (N. S.), 396; Story on Prom. Notes (7th ed.), sec. 183; Martin *et al. v.* Smylee, 55 Mo. 577, 578; Bauer *v.* Franklin County, 51 Mo. 205, 206.

*T. A. Russell*, for respondents, cited: Horton *v.* Boyne, 52 Mo. 531; Greer *v.* Yosti, 56 Mo. 307; Bennet *v.* Torlina, 56 Mo. 309; Corby *v.* Butler, 55 Mo. 398; Merrick *v.* Phillips, 58 Mo. 436; Story Eq. Jur., sec. 199 (11th ed.); Holland *v.* Anderson, 38 Mo. 55.

GANTT, P. J., delivered the opinion of the court.

Hickman executed to the National Insurance Company his negotiable promissory note for $203.95, dated December 1, 1867, and payable in two years thereafter. Before

maturity this note was assigned to plaintiff for $100. The note being unpaid, plaintiff sued. Hickman answered that the note was given as a premium for a policy which the National Insurance Company induced him to take out by fraudulently representing to defendant that the company was solvent and reliable, whereas it was nothing but a cheat, and its business was carried on for the mere purpose of swindling those who insured in it; that when the note was transferred to plaintiff he had full knowledge of the fraudulent nature of the note. By his reply, plaintiff claimed to be an innocent holder for value without notice. There was a trial, and the jury found for the defendant. On appeal to the general term the judgment was reversed, and defendant appealed to this court.

At the special term the only reasons assigned for a new trial were that—

1. The verdict was against law and evidence.

2. Because the court refused plaintiff's instructions.

3. Because the court admitted improper evidence on the part of defendant.

4. Because the court excluded proper evidence on the part of plaintiff.

The instructions refused were the following:

1. The jury are instructed that, in law, a valuable consideration is any moneyed [money] consideration, and, to be valuable, need not be of the marketable value of the note.

2. If the jury believe from the evidence that the plaintiff took the note sued on for a valuable consideration, without any notice of any fraud upon the part of the National Insurance Company, they will find for the plaintiff.

3. If the jury believe from the evidence that the defendant Hickman made and delivered the note in question to the National Insurance Company, and that the National Insurance Company, before the maturity thereof, transferred said note to the plaintiff for a valuable consideration, then

they will find for the plaintiff, unless they believe that the plaintiff, at the time he took the note, knew that it was procured by fraud.

4. The jury are instructed that the note sued on is, by its terms, negotiable, and although they may find that the National Insurance Company procured it by fraud, yet, if the note came into the hands of the plaintiff, Terry, without any notice of such fraud, and that he paid a valuable consideration therefor, they will find for the plaintiff.

The following were given :

For the defendant : If the jury believe from the evidence that the consideration of the note sued on was the making by the National Insurance Company of a policy of insurance to defendant, and that, prior to the receipt of such policy and the execution of said note by defendant, the officers and agents of said insurance company falsely and fraudulently represented to defendant that said company was a good and solvent company, and that defendant, relying solely upon said false and fraudulent representations, accepted said policy and executed said note, and that said note was afterwards assigned by the company to plaintiff, and plaintiff, at the time of the said assignment, knew, or by the exercise of ordinary prudence might have known, how said note was obtained and the consideration therefor, then, although they may further believe from the evidence that said note was assigned to plaintiff before its maturity and for value, they will find a verdict for defendant.

For the plaintiff : 1. The court instructs the jury that the burden of showing that the plaintiff is not the *bona fide* holder of the note sued upon, on account of fraud in the taking and transfer of the same, is upon the defendant ; and that such fraud is not to be presumed, but must be established by competent evidence ; and, unless the jury find that Terry knew, or had grounds to believe, at the time of the purchase of the note, that it was obtained by fraud, they will find for the plaintiff, if they find that under the

evidence and instructions he has proved himself the owner thereof.

2. The jury are instructed that if they believe from the evidence that the plaintiff acquired the note in question for a valuable consideration, then he can maintain this action without any written assignment.

The errors assigned by respondent in respect of the action of the court at special term are :

1. That the court refused to admit the certificate of incorporation of the National Insurance Company.

2. That it erred in admitting evidence of the amount of the capital stock of the National Insurance Company.

3. That it erred in admitting evidence of fraud and want of consideration, before giving evidence of notice of these to plaintiff.

4. In refusing plaintiff's instructions.

5. In giving defendant's instructions.

The evidence that the company was a bubble, from the first, was tolerably full, and the evidence tended to show that, when the note was assigned, its reputation for insolvency and fraud was general. This, however, is denied by the witnesses of plaintiff. The evidence as to the price given for the note was conflicting. It was admitted that the amount of it was $100 ; but whether it was for money paid, or in compensation for services rendered by plaintiff in his professional capacity, was not clear. He deposed to the first. Mr. Stone, a witness for defendant, deposed that plaintiff had told him, in the spring of 1868, that he received the note in part payment for services as attorney. The difference is important to this extent, that, if he had been the attorney of the company before taking the note, he was more likely to be acquainted with the state of its affairs, and cognizant of the frauds by which it had procured its policies. It may also be important for another reason. It was held by the Supreme Court of Missouri (*Goodman* v. *Simonds*, 19 Mo. 106) that a party to whom negotiable

paper is transferred merely as security for a preëxisting debt takes it subject to all equities existing between the original parties. This was decided in 1853. In 1847 the same court had given a different ruling. *Clark* v. *Loker*, 11 Mo. 97. The courts of New York and Tennessee had decided the same matter differently from the views entertained by the Supreme Court of the United States (*Swift* v. *Tyson*, 16 Pet. 1), and the case of *Goodman* v. *Simonds* coming afterwards before the Supreme Court of the United States (20 How. 343), that court, after a long and critical examination of the authorities, made a decision, in 1857, which is diametrically opposed to the views entertained by the Supreme Court of Missouri in 1853. But this is not a point on which the Supreme Court of the United States has controlling authority, and this court receives the law as expounded by our own court of last resort.

No instruction was asked on this head, nor was the sufficiency of the consideration directly challenged. It would appear that the argument of the defendant was that the small sum paid for the note was evidence of the suspicion with which the plaintiff regarded it, for it was in proof that he satisfied himself preliminarily of the solvency of the maker. In fact the only evidence on which the defendant relied to support his answer was, first, the fraud practiced on him by the National Insurance Company; second, the presumption arising from the alleged notorious condition of the insurance company when the note was assigned, taken in connection with the inadequate price paid for it, that plaintiff had notice of the infirmity of the company's right to hold defendant. It may be conceded that the tendency of the evidence was to establish these facts, and we must now see whether the plaintiff was injured by any ruling of the court at special term. The errors he specially assigns in argument are:

First, that the court excluded the certificate of incor-

poration of the National Insurance Company. But this did him no harm, for the note was admitted in evidence for another reason, and the proof of the incorporation of the company was only needed for this purpose.

Second, that the court erred in admitting evidence of the want of capital on the part of the company. We see no error here. It was natural and proper that, in the attempt to prove the original insolvency and worthlessness of the company, evidence should be given that its alleged capital had no existence.

The third error assigned was that the court erred in admitting evidence of fraud and want of consideration, before giving evidence that plaintiff had notice of this fraud and want of consideration.

The order in which such evidence is given must rest very much in the discretion of the court of first instance. We can perceive nothing in the present case calling for any review of that discretion. Indeed, it seems more logical to give evidence of a fact before proceeding to prove that the knowledge of this fact came to another, than to invert the order of the evidence. At any rate, it is not error to follow the order observed by the Circuit Court.

The fifth error assigned is the giving of defendant's instructions. This was not assigned as a reason for a new trial, and cannot be insisted on.

The fourth error assigned is the refusal of plaintiff's instructions. Whether there be error here will depend, not so much on the abstract correctness of a refused instruction, as the need of it to enable the jury to dispose of the case before them. If the instructions given were a correct comment on the evidence, and duly directed the jury as to the law applicable to it, nothing more was needed, and the refusal to lay before the jury abstract or superfluous legal propositions of unimpeachable accuracy cannot be a ground of reversal.

The first instruction refused was not necessary, nor can

it be said to be unqualifiedly correct. It might be taken to mean that a person giving the smallest sum of money for a note calling for the payment of thousands was in a legal sense a purchaser of it for a valuable consideration. The plaintiff has no reason to complain if a proposition so carelessly worded, and so liable to be misunderstood, is withheld from the jury.

The second instruction embodies a correct principle, but it had been already given in substance in the two declarations of law asked by the plaintiff and given by the court.

The third and fourth instructions refused are liable to the same observations.

It is not our province to comment upon the weight of evidence. The jury, under correction of the court of first instance, has control of that matter. We are of opinion that there was evidence tending to prove the defenses set up by the answer, and that the jury was properly instructed as to the law applicable to that evidence. The judgment of the court in general term is reversed, and the judgment of the court in special term is affirmed. The other judges concur.